UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIKEL C.G.,[1] | No. 1:26-cv-03051-TLN-SCR |
| Petitioner, | A# 244-713-485 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Maikel C.G.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed response. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. On September 14, 2024, Petitioner entered the United States seeking asylum.  (ECF No. 1 at 4.) Petitioner used the CPB One application process.  (*Id.*; ECF No. 7-1 at 2.)  Upon entry, Petitioner was processed by immigration authorities, issued a Notice to Appear for immigration court, and then was paroled into the United States.  (ECF Nos. 7-1 at 2; 7-2.)  Petitioner continues to pursue immigration relief; he has also applied for an adjustment of status.  (ECF No. 1 at 4.)  Petitioner's immigration proceedings are still pending; he is not subject to any final order of removal.  (*Id.* at 5, 16–17.)

Petitioner's only criminal history involves a pending non-violent misdemeanor charge. (*Id.* at 2, 61; ECF No. 7-3.)  Petitioner was arrested on February 5, 2026.  (ECF No. 1 at 5.) Petitioner alleges he was approached by individuals in plain clothes and masks who did not identify themselves as police and, fearing for his life, he ran.  (*Id.*)  Petitioner is now charged with a misdemeanor for resisting an officer without violence.  (*Id.*)  The local prosecutor did not charge Petitioner with the offense for which the officers initially attempted to arrest Petitioner. (*Id.* at 5, 61, 70.)  A state court judge reviewed Petitioner's pending case, granted him a low bond, and authorized his release.  (*Id.* at 5, 61.)  Petitioner's family posted bond, but Petitioner remains detained due to a hold by U.S. Immigration and Customs Enforcement ("ICE"), placed on February 7, 2026.  (*Id.* at 5, 61; ECF No. 7-4 at 2.)  Thereafter, Petitioner was transferred to ICE custody where he remains detained.  (ECF No. 1 at 5.)

Petitioner's detention has severely harmed his family.  Petitioner is the sole financial provider for his wife and ten-year-old son. (ECF No. 1 at 5, 20.)  Because of the loss of Petitioner's income, Petitioner states his family has lost their home and his wife and son are now living in a shelter.  (*Id.* at 6.)  Additionally, Petitioner's son is diagnosed with severe autism and complex developmental and behavioral conditions, which require medication and intensive therapies.  (*Id.* at 6, 20–60.)  Petitioner states his son's mental health has deteriorated due to his father's absence and his minor son recently attempted suicide and was hospitalized.  (*Id.* at 6.)

Petitioner's detention has also deteriorated his own health.  Petitioner suffers from medical conditions, including asthma and effects from a prior cranial surgery, which he claims are not being adequately treated in custody.  (*Id.*)  In detention, Petitioner states he has experienced vision loss, hearing problems, and panic attacks.  (*Id.*)

Over three months of detention, Respondents have not provided Petitioner with a bond hearing or other individualized custody determination hearing.  (*Id.* at 2, 8.)  Petitioner now challenges the lawfulness of his civil detention through the instant Petition.  (ECF No. 1.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention without a hearing violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–9.)  Respondents contend Petitioner is not entitled to a bond hearing and he is subject to mandatory detention.  (ECF No. 7 at 1–2.)  The Court addresses each claim in turn.

### A.   Immigration and Nationality Act

Petitioner alleges he is entitled to a prompt and individualized bond hearing under 8 U.S.C. § 1226(a).  (ECF No. 1 at 9.)  Respondents counter that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No. 7 at 2.)

Under the INA, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Additionally, § 1226(a) authorizes discretionary detention upon issuance of an administrative warrant.  *See Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).") (emphasis in original).

Conversely, 8 U.S.C. § 1225(b)(2) mandates detention during expedited removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States or have been paroled.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

In comparison, "[t]he government's proposed reading of the statute (1) disregards the

4

plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). Indeed, Respondents recognize the cases contrary to their position in this district (ECF No. 7 at 3), yet they offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including a bond hearing, at minimum. Respondents have not provided Petitioner any such bond or custody hearing in three months of detention.[2] Therefore, Respondents have violated the INA, 8 U.S.C. § 1226(a).

B. Fifth Amendment Procedural Due Process

Petitioner also alleges his detention without a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 8–9.) Respondents argue that Petitioner is only entitled to the process conferred by statute. (ECF No. 7 at 2–3.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[2] Additionally, it appears there was no warrant for Petitioner's arrest and detention. The Court ordered Respondents to file, *inter alia*, "any custody warrants or notices" for Petitioner. (ECF No. 5.) Respondents did not provide any warrant for Petitioner's arrest at issue. (*See* ECF No. 7.)

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. Petitioner was paroled into the United States and since that time, he has worked to support his family, obtain therapies for his child, and pursue immigration relief. Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents make two arguments: (1) Petitioner is only entitled to the process provided by statute, and (2) Petitioner's encounter with law enforcement terminated his grant of release. (ECF No. 7 at 2–3.) First, the Court has already found above that Petitioner is subject to § 1226(a) rather than § 1225(b), so even accepting Respondents' argument as true, Petitioner is entitled to more process than he was provided, and his liberty interest is not diminished by discretionary statutory authority to detain him. Second, Respondent provides no authority, and this Court is aware of none, establishing that an individual's liberty interest is stripped at the moment he encounters law enforcement. Even if such an encounter were a parole violation (a supposition posed by Respondents), the "Government's assertion that a parole grantee is entitled to no due process procedural protections prior to rescission of his parole grant is

6

untenable." *Drayton v. McCall*, 584 F.2d 1208, 1214 (2d Cir. 1978).  The Court thus rejects Respondent's assertion that Petitioner has no liberty interest by mere encounter with law enforcement, absent further process.  *See, e.g., Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (rejecting the government's position that a petitioner's DUI arrest justifies re-detaining him without due process).  Moreover, there is no evidence in the record showing Petitioner's parole was in fact properly terminated or revoked for any reason at all, let alone an encounter with law enforcement.  (*See generally* ECF No. 5-1.)  *See also* 8 C.F.R. § 212.5 (setting out procedures for termination of parole).

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.  Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner has now been detained for three months without any opportunity to be heard as to his detention.  While in detention, he is unable to care for his minor child who suffers from various conditions requiring intervention and support; Petitioner contends he is not receiving adequate medical care; and his family has lost their housing because he cannot financially provide for them.  Accordingly, this factor weighs strongly in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received

any process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to an order of removal; his immigration proceedings are still pending.  Petitioner's only criminal matter is a pending non-violent misdemeanor, and Respondents do not contend that Petitioner is a danger to the public or a flight risk.  Therefore, the risk that he is being detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at \*5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at \*5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondent and are indeed the very processes required under § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

At a minimum, due process required notice and a hearing as to Petitioner's detention.  Respondents did not provide Petitioner any notice or a pre- or post-deprivation hearing in three months of detention.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment and federal law.  Accordingly, IT IS HEREBY ORDERED:

8

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[3]

2. Respondents must IMMEDIATELY RELEASE Petitioner Maikel C.G. (A# **244-713-485**) from custody.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

3. **Respondents must file a notice of compliance with this Order by May 14, 2026.**

4. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. The Clerk is directed to serve the **California City Corrections Center** with a copy of this Order.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

   IT IS SO ORDERED.

Date: May 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]     Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 9–10.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

9